**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

**LISA ST. MARTIN, individually and**
**on behalf of her minor daughter,**
**AMBER COMO**

**CIVIL ACTION**

**VERSUS**

**NO. 08-1047**

**ST. JOHN PARISH SHERIFF**
**WAYNE JONES, ST. JOHN PARISH**
**SHERIFF'S OFFICE, OFFICE OF THE**
**PARISH OF ST. JOHN, WAYNE**
**SCHAEFFER, individually and in his**
**official capacity as a ST. JOHN PARISH**
**SHERIFF DEPUTY, XYZ INSURANCE**
**COMPANY FOR ST. JOHN PARISH,**
**XYZ INSURANCE COMPANY FOR ST.**
**JOHN PARISH SHERIFF'S OFFICE**

**SECTION "C" (5)**

## ORDER AND REASONS[1]

Before the Court is the motion of the Defendant, former St. John Parish Sheriff Deputy Allen

Wayne Schaeffer ("Schaeffer"), to dismiss the Plaintiffs' claims against him pursuant to Federal

Rule of Civil Procedure 12(b)(6).  The Plaintiffs, Lisa St. Martin, individually and on behalf of her

minor daughter, Amber Como ("Plaintiffs"), oppose the motion.  For the following reasons, the

Defendant's motion is **DENIED.**

**I.**      **Background**

Plaintiffs filed the instant lawsuit in this Court alleging civil rights violations under federal

and state law.  Rec. Doc. 1, p. 1.  Schaeffer presents multiple grounds for dismissal.  He argues that

---

[1] Skelly McCay, a second year law student at Tulane University Law School, assisted
with the research and preparation of this decision.

1

Plaintiffs cannot bring suit against him in his official capacity as an employee of the St. John Parish Sheriff's Office while seeking to recover from the St. John Parish Sheriff's Office, the Sheriff (in his official capacity), and the Parish itself.  Rec. Doc. 16-2, p. 1.  Additionally, Schaeffer argues that Plaintiffs' complaint fails to allege sufficient facts to state a claim under 42 U.S.C. §§ 1985 and 1986 and that Plaintiffs' U.S.C. § 1985(3) claims are contrary to law in light of the doctrine of intracorporate conspiracy.  Rec. Doc. 16-2, p. 2.

Plaintiffs' claims against all of the Defendants arise either directly or indirectly out of an alleged encounter between Lisa St. Martin ("St. Martin") and Schaeffer on the night of Feb. 20, 2007 in St. John Parish, LA.  Rec. Doc. 1, p. 5.  Some days prior to this date,  St. Martin met with Deputy Schaeffer and other police officers at the St. John Parish Sheriff's Office regarding the recent theft at a convenience store she frequented.  *Id.* at. 4.   During this visit, Deputy Schaeffer informed St. Martin that he would be the officer in charge of investigating her statement further.  *Id.*  St. Martin was already familiar with Defendant Schaeffer because he coached her daughter's softball team.  *Id.*

On Feb. 20, Schaeffer telephoned St. Martin to say that he required her further cooperation with his investigation.  *Id.*  St. Martin alleges that Schaeffer told her to meet him in his unmarked police vehicle in a park near her house.  *Id.*  During this meeting, St. Martin sat in the front passenger seat of Schaeffer's vehicle with Schaeffer next to her in the driver's seat.  *Id.*  Schaeffer wore plain clothes, but his Sheriff's badge and weapon were displayed.  *Id.*  Schaeffer allegedly told St. Martin that her cooperation could lead to the termination of any line of investigation connected to the theft in which she was a suspect.  *Id.*  After St. Martin repeated the statement she had previously given to police, Schaeffer allegedly unbuttoned his trousers and unfastened his belt.  *Id.* at 5.  Schaeffer then abruptly grabbed St. Martin's head and pulled it towards his crotch where her face came into contact

2

with his open trousers. *Id.* A physical struggle ensued during which Schaeffer demanded that St. Martin submit to his sexual advances. *Id.* St. Martin continued to resist and Schaeffer eventually opened the passenger door and shoved/kicked her out of the vehicle. *Id.*

When she returned home, St. Martin received multiple phone calls from Schaeffer over the course of an hour in which Schaeffer made statements that St. Martin interpreted as threats of false arrest and death. *Id.* at 5-6. The phone calls awakened St. Martin's young daughter, Plaintiff Amber Como ("Como"), who became distressed upon witnessing her mother's condition. *Id.* at 6. St. Martin alleges that Schaeffer repeatedly harassed her in the days following their February 20 encounter by making additional threatening phone calls and by driving his car past her residence at night and flashing his high-beam lights through her windows. *Id.* On Feb. 24, 2007, St. Martin finally told her daughter about Schaeffer's threats, and expressed fears that she would be going to jail. *Id.* at 6-7. Her daughter became extremely distraught and physically ill upon learning about her mother's situation, causing her to miss several days of school. *Id.* at 7.

The alleged encounter between St. Martin and Schaeffer on the night of February 20, 2007 and the allegations of ensuing harassment form the basis of the Plaintiffs' complaint. In their complaint, St. Martin and Como allege state and federal civil rights violations against Schaeffer, including abuse of police power, assault, sexual battery, and harassment.[2] *Id.* at 3. St. Martin and Como state causes of action against Defendant Sheriff Wayne Jones for negligently failing to act upon numerous complaints made over the 7 years prior to February 20, 2007 about Schaeffer's conduct in his capacity as a police officer. *Id.* St. Martin and Como further allege that Defendants

---

[2]In general, the pleadings do not distinguish between the various state claims or otherwise substantially address them or their viability, and the Court does not intend to address specific state claims herein.

St. John Parish and the St. John Parish Sheriff's Office were negligent in failing to acknowledge and provide redress for Schaeffer's prior professional misconduct and criminal behavior. *Id.* Plaintiffs allege that the actions and omissions of all of the Defendants violated their civil rights and are the proximate causes of their injuries. *Id.* at 8.

Defendant Wayne Schaeffer filed the instant motion to dismiss Plaintiffs' claims against him for failure to state a claim upon which relief can be granted, pursuant to Federal Rule of Civil Procedure 12(b)(6).

## II.    Standard of Review

Rule 12(b)(6) motions to dismiss are disfavored means of disposing of a case and should be denied unless the moving party can show, beyond a doubt, that the plaintiff cannot prove a plausible set of facts in support of her claim which would entitle her to relief. *Bell Atlantic Corp. v. Twombly*, --- U.S. ---, 127 S.Ct. 1955 (2007).[3]  When considering a 12(b)(6) motion, a court must accept all of the plaintiff's factual allegations as true and resolve all ambiguities or doubts regarding the sufficiency of the complaint in the plaintiff's favor. *Fernandez-Montes v. Allied Pilots Ass'n.*, 987 F.2d 278, 184 (5th Cir. 1993).  Because the federal rules require only general notice pleading, a court must also liberally construe a plaintiff's allegations. *United States v. Uvalde Consol. Indep. Sch. Dist.*, 625 F.2d 547, 549 (5th Cir. 1980).  However, even liberally construed, a complaint will

---

[3] In Twombly, the Supreme Court advised that, "[w]hile a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, . . . a plaintiff's obligation to provide the grounds of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do . . ." --- U.S. ---, 127 S.Ct. at 1965.  The Court further proclaimed that "[f]actual allegations must be enough to raise a right to relief above the speculative level . . ." on the assumption that the allegations are true even if doubtful in fact. *Id.* Dismissal is not warranted by a judge's disbelief of a complaint's factual allegations or the appearance that recovery is remote and unlikely. *Id.*

not survive a motion to dismiss if it relies solely on "conclusory allegations or legal conclusions masquerading as factual conclusions." *Southern Christian Leadership Conference v. Supreme Court of the State of Louisiana*, 252 F.3d 781, 786 (5th Cir. 2001) (citing *Fernandez-Montes.*, 987 F.2d at 184).

Arguably, there is some doubt surrounding whether an ordinary pleading standard is expected of the Plaintiffs in this case. Within the Fifth Circuit, there has been substantial consideration of the appropriate pleading standard for individual capacity claims brought under 42 U.S.C. §§ 1983, 1985, and 1986 against public officials. In *Elliot v. Perez*, the court held that in such cases where the defendant's qualified immunity would determine his amenability to suit, complaints must be pled with "factual detail and particularity." 751 F.2d 1472, 1473 (5th Cir. 1985). The court held that a heightened pleading standard was appropriate and, indeed, necessary to overcome the defense of qualified immunity that so often obstructs civil suits against government agents. *Id.* Later, the Fifth Circuit maintained that a heightened pleading standard for § 1983 claims, Civil Action for Deprivation of Rights, against public officials withstood the Supreme Court's holding in *Leatherman v. Tarrant County Narcotic Intelligence and Coordination Unit*, 507 U.S. 163 (1993). *Schultea v. Wood*, 47 F.3d 1427 (5th Cir. 1995). In *Leatherman*, the Court held that a federal court may not apply a heightened pleading standard, more stringent than the usual pleading requirements of Rule 8(a), in civil rights cases alleging municipal liability. 507 U.S. at 168. The Fifth Circuit took the position in *Schultea* that the *Leatherman* ruling did not have to be read to reach cases involving *individual* public officials and insisted that heightened pleading could be required where a qualified immunity defense could present a legitimate hurdle to a plaintiff's recovery. 47 F.3d at 1430; *see also Johnson v. Johnson*, 385 F.3d 503, 529 (5th Cir. 2004) (tempering that position by holding that a heightened

pleading standard in some § 1983 cases did not require a plaintiff to fully anticipate a qualified immunity defense in his complaint to avoid risking Rule 12 dismissal). The evolution of a heightened standard for claims brought against public officials under 42 U.S.C. § 1983 was completed when the Fifth Circuit provided a mechanism for plaintiffs facing immunity defenses and other responses requiring them to plead with particularity or risk dismissal. *Schultea*, 47 F.3d at 1433. The court held that "[t]he considerations that had led to the adoption of heightened pleading would henceforth be satisfied . . . through the device of a detailed Rule 7 reply, which the district court could order on the defendant's motion or sua sponte." *Johnson*, 385 F.3d at 529.

Following the Fifth Circuit's lead, this Court has required a heightened pleading standard for claims based in § 1983, as opposed to a "short and plain statement of the claim," where the defendant is an individual member of a public entity. *O'Dwyer v. Louisiana*, Civ. Action No. 06-7280, 2007 WL 4163431, at *2 (E.D. La. Nov. 21, 2007) (Berrigan, J.). However, as the Fifth Circuit distinguished its qualified immunity jurisprudence by holding that the *Leatherman* pleading rule did not apply to § 1983 claims against individuals, this Court has held that the Fifth Circuit's requirement of specificity and particularity only has force when the defendant raises a qualified immunity defense. *See Jenkins v. Lee*, No. Civ. A. 98-2367, 1999 WL 97931, at *3 (E.D. La. Feb. 17, 1999) (Berrigan, J.). Unless that defense is raised, plaintiffs need only meet the requirements of general notice pleading articulated in Federal Rule of Civil Procedure 8(a)(2) in order to defeat a 12(b)(6) motion. *Id.*

### III.  **Law and Analysis**

Pursuant to Rule 12(b)(6), Defendant Wayne Schaeffer moves this Court to dismiss with prejudice Plaintiffs' official capacity claims against him on the grounds that his employers, St. John

Parish Sheriff Wayne Jones and the St. John Parish Sheriff's Office, are also defendants to the instant lawsuit. (Rec. Doc. 16-2, p. 1). Schaeffer contends that suits naming as defendants an entity and a member of that entity acting in his official capacity are contrary to law. *Id.* In addition, Schaeffer moves to dismiss with prejudice Plaintiffs' claims arising out of 42 U.S.C. §§ 1985 and 1986, on the grounds that Plaintiffs have not specifically alleged facts showing that the Defendants conspired to violate their constitutional rights or negligently failed to prevent a conspiracy. (Rec. Doc. 16-2, p. 2-5). Schaeffer specifically argues that Plaintiffs have failed to allege that any conspiracy was directed at a protected class of which she is a member, as is required of claims brought under 42 U.S.C. § 1985(3). Alternatively, Schaeffer argues that Plaintiffs' 1985(3) claims against him are barred by the doctrine of intracorporate conspiracy.

### A. Official Capacity Claims

Schaeffer's motion cites to the United States Supreme Court's holding in *Kentucky v. Graham*, 473 U.S. 159, 166 (1985) (citing *Monell v. New York City Dept. of Social Services*, 436 U.S. 658 (1978)), that an official capacity suit is "only another way of pleading an action against an entity of which an officer is an agent" and is to be treated as a suit against the entity. (Rec. Doc. 16-2, p. 1 ). The Fifth Circuit and a court in this district have enforced an identical rule and barred claims brought in a single action against official capacity individuals and against the entity of which they are members. *See Sims v. Jefferson Downs Racing Assoc., Inc.*, 778 F.2d 1068 (5th Cir. 1985); *Shanks v. Parish of Jefferson, LA*, No. Civ. A. 04-1057, 2004 WL 1737904 (E.D. La. Jul. 30, 2004) (Vance, J.). Both courts held that, due to the nature of official capacity suits, a judgment against a corporation and its officer would "effectively make the corporation liable twice for the same act." *Sims*, 778 F.2d at 1081; *Shanks*, 2004 WL 1737904, at *1.

In each dismissal of an official capacity suit cited to in Schaeffer's motion, the pleadings allege identical claims against individual officials and the entities by which they are employed. *See id.; Sims,* 778 F.2d at 1073, 1081; *Allen v. Tulane University*, Civ. A. No. 92-4070, 1993 WL 459949, at *4 (E.D. La. Nov. 2, 1993); *Castro Romero v. Becken*, 256 F.3d 349, 365 (5th Cir. 2001). Accordingly, the Fifth Circuit has twice expressed that these actions are barred by virtue of subjecting a defendant-entity to "duplicative" or "redundant" liability. *Indest v. Freeman Decorating, Inc.*, 164 F.3d 258, 262 (5th Cir. 1999); *Romero*, 256 F.3d at 355. The rule clearly emerging from these cases is that a judgment against an individual acting in an official capacity and against the entity that employs him on the same claim is equivalent to a judgment against the entity twice over. *Sims,* 778 F.2d at 1081. Although claims that could give rise to those gratuitous judgments merit dismissal, this rule does not apply to *separate* claims being brought against an official and his entity in the same action, which are governed by the general rules of pleading. FED. R. CIV. P. 8.

Schaeffer's application of the law to the instant case is misguided. In a motion to dismiss under Rule 12(b)(6), the Court must "resolve doubts as to the sufficiency of the claim in the plaintiff's favor." *Shanks*, 2004 WL 1737904 at *1 (quoting *Vulcan Materials Co. v. City of Tehuacana*, 238 F.3d 382, 387 (5th Cir. 2001)). St. Martin and Como have stated claims against Schaeffer personally and in his official capacity, including civil rights violations resulting from intentional acts of assault, battery, and false imprisonment. (Rec. Doc. 1, p. 2 ). As to Defendants Sheriff Wayne Jones and the St. John Parish Sheriff's office, Plaintiffs have alleged claims of negligence in failing to prevent or subsequently address Schaeffer's actions. (Rec. Doc. 1, p. 1, 7-8). The differences between these allegations is sufficient to defeat the risk that Plaintiffs would recover twice from one Defendant on the same claim. Therefore, it would be inappropriate to grant

Schaeffer's motion to dismiss on the grounds that St. Martin and Como have filed an official capacity complaint that, if allowed to proceed, could result in double liability for one or more defendants.

In so ruling, the Court is mindful of Schaeffer's concerns that Plaintiffs' case against him, if allowed to proceed, could result in Defendant St. John Parish Sheriff's Office having to open its pockets twice, the concern expressed by the Supreme Court in *Graham*. 473 U.S. at 166 (holding that the real party in interest in official capacity suits against individuals is the government entity that will ultimately be liable for any damages).  However, though Plaintiffs' allegations may be inartfully directed, the Court understands their complaint to state the following claims. Against Defendant Schaeffer, Plaintiffs allege violations of federal and state civil rights including abuse of police power, assault, assault with the intent to commit false imprisonment, sexual battery, attempt to commit sexual battery, and sexual harassment.  (Rec. Doc. 1, p. 3).  These claims clearly stem from the encounter between St. Martin and Schaeffer that allegedly took place in his police vehicle on February 20, 2007.  Next, Plaintiffs allege that, as a result of Schaeffer's actions, including his alleged harassment of the Plaintiffs subsequent to the February 20th encounter, they suffered severe emotional distress, manifested by depression, anxiety, loss of appetite, and insomnia.  (Rec. Doc. 1, p. 8).

St. Martin and Como's claims against the remaining Defendants assert no intentional torts or direct civil rights violations, but, instead are grounded in the theory that the remaining Defendants negligently failed to prevent Schaeffer's gross professional and criminal misconduct.[4]  These

---

[4]Apart from the insurance carriers for the Office of the Parish of St. John and the St. John Parish Sheriff's Office, Plaintiffs' complaint names as Defendants Sheriff Wayne Jones (Defendant Schaeffer's superior), the St. John Parish Sheriff's Office, and the Office of the

allegations provide that Sheriff Jones and his Office received numerous complaints about Schaeffer's conduct under the color of law, including "prior unprofessional malfeasance and criminal behavior" that allegedly took place throughout the seven years prior to the February 20, 2007 incident.  (Rec. Doc. 1, p. 7).  Plaintiffs argue that the Sheriff's Office and Sheriff Jones negligently caused their enumerated damages by ignoring these complaints, by failing to provide adequate discipline and appropriate training to its officers, and by general inaction in the face of the "potential danger" posed by Schaeffer.  (Rec. Doc. 1, p. 7, 8).  Read under the plaintiff-leaning standards of Rule 12(b)(6), St. Martin and Como's complaint alleges separate instances and manners of civil rights violations against each of the named Defendants, principally against Schaeffer and Defendant Sheriff Wayne Jones.[5]

The Court also notes that Plaintiffs bring one set of actions against Sheriff Wayne Jones solely in his *official* capacity and another set of actions against Schaeffer in his *personal* and official capacity.  (Rec. Doc. 1, p. 2).  Although Plaintiffs' official capacity claims against Schaeffer are not precluded as a matter of law, considering that there are no duplicative claims to be found in the complaint, a mixed question of fact and law could remain: whether Schaeffer's alleged actions on the night of February 20, 2007 were taken in his official capacity as a state law enforcement officer, or in his personal capacity under the color of state law.  In the language of *Kentucky v. Graham,* in which the Supreme Court distinguished personal liability from official liability, Plaintiffs' personal

---

Parish of St. John.  Plaintiffs' theory of liability contends that the Office of the Parish of St. John controls all offices and agents of St. John Parish, including the Sheriff's Office; that the St. John Parish Sheriff's Office controls all actions of Sheriff Wayne Jones and his deputies in their official capacity, including Defendant Wayne Schaeffer; and that Sheriff Wayne Jones is in control of and is responsible for supervising the actions of his deputies, including Schaeffer. (Rec. Doc. 1, p. 2).

[5]Plaintiffs, in fact, present this argument in their opposition to the motion to dismiss.

capacity claims against Schaeffer are simply required to allege that he caused a rights deprivation while acting under the color of state law. 473 U.S. at 166.  This burden would presumably be met if, as Plaintiffs allege, Schaeffer assaulted and threatened St. Martin while wearing his Sheriff's badge, driving a police vehicle, and purportedly advancing a criminal investigation in which St. Martin was assisting police.

Under *Graham*, the threshold for official capacity claims is somewhat harder to cross, "for a government entity is liable under § 1983 only when the entity itself is a 'moving force' behind the deprivation." *Id.* (quoting *Polk County v. Dodson*, 454 U.S. 312, 326 (1981).  The Court similarly held in *Monell* that, in an official-capacity suit, the entity's "policy or custom" needs to play a role in the rights violation, but the custom does not have to have "received formal approval through the body's official decisionmaking channels."  436 U.S. at 690.  Without discovery, one cannot know the extent to which, if at all, Sheriff Jones, his Office, and the Parish of St. John fostered an environment conducive to Schaeffer's conduct.  Moreover, Schaeffer's objection to Plaintiffs' official capacity claims against him is limited to charges of duplicative liability and double damages and, so, it does not invoke the evidentiary standards established by *Graham*.  Though the *Graham* standards may become pertinent later, at the pleading stage it is sufficient that St. Martin and Como make an intelligible declaration of their claims against each of the principle Defendants, and the Court finds unpersuasive Schaeffer's arguments that the manner in which they have done so is contrary to the law governing official capacity suits. Therefore, Plaintiff's official capacity claims against Schaeffer will not be dismissed under Rule 12(b)(6).

### B.    Sufficiency of § 1985(3) Claims

Schaeffer next moves for a 12(b)(6) dismissal of Plaintiffs' claim brought under 42 U.S.C.

§ 1985.  (Rec. Doc. 16-2, p. 1).  Relying on Supreme Court precedent for the elements required of a plaintiff bringing an action under § 1985, Schaeffer argues that Plaintiffs state no claim upon which relief can be granted because they fail to allege that Schaeffer conspired with other defendants to deprive her of her civil rights or that the conspiracy was motivated by a racial or class-based animus. (Rec. Doc. 16-2, p. 3-4).

Schaeffer first points to the fact that Plaintiffs do not use the word "conspiracy" in their complaint as evidence of failure to state a claim under § 1985(3).  (Rec. Doc. 16-2 p. 3-4).  The absence of particular language from Plaintiffs' complaint does not, in itself, merit dismissal if the complaint puts Schaeffer on "fair notice of what the plaintiffs' claim is and the grounds upon which it rests." *Swierkiewicz v. Sorema*, N.A., 534 U.S. 506, 514-515 (2001) (citing *Conley v. Gibson*, 355 U.S. 41 (1954)); *see also Uvalde*, 625 F.2d at 549 (holding that initial pleadings only need to give notice of a claim and should be construed so as to do substantial justice). Rule 12(b)(6) is designed to facilitate a judgment on the merits of the case and requires only general notice pleading.  *See Baris v. Sulpicio Lines Inc.*, 74 F.3d 567, 571 (5th Cir. 1996); *see also Ashe v. Corley*, 992 F.2d 540, 545 (1993) (citing *Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit*, 507 U.S. 163 (1993)) (holding that the notice pleading system of the federal rules, not a heightened pleading standard, applies to claims brought under 42 U.S.C. § 1983).  Under this standard, the mere absence of the term 'conspiracy' from the text of Plaintiffs' complaint is not a bar to an action arising out of 42 U.S.C. § 1985(3).

Next, Schaeffer argues that Plaintiffs have failed to allege facts necessary to support their 42 U.S.C. § 1985(3) claim.  (Rec. Doc. 16-2, p. 3-4).  To bring a claim under § 1985(3), a plaintiff must allege that two or more persons have conspired to deprive, either directly or indirectly, any person

or class of persons of the equal protection of the laws. *Deubert v. Gulf Fed. Sav. Bank*, 820 F.2d 754, 757 (5th Cir. 1987). In addition, the Supreme Court has held that in order for a § 1985(3) complaint to state a claim upon which relief can be granted, "there must be some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirator's action." *Griffin v. Breckenridge*, 403 U.S. 88, 102-03 (1971). Under *Griffin*, absent any allegations of such an animus, § 1985(3) will not extend to "all tortious, conspiratorial interferences with the rights of others." *Strain v. Citizens Bank & Trust Co.*, 68 F.R.D. 697, 701 (E.D. La.. 1975). In the dismissal context, Schaeffer cites to other jurisdictions for the proposition that, under *Griffin*, a complaint based in § 1985(3) must, as a threshold matter, allege a racial or otherwise class-based animus in order to survive a dispositive motion against it. (Rec. Doc. 16-2, p. 3); *Vines v. Howard*, 658 F.Supp. 34 (E.D. Pa. 1987); *Komasinski v. I.R.S.*, 588 F.Supp. 974 (D.C. Ind. 1984).

Read, as it must be, in the context of Rule 12(b)(6), Schaeffer's contention that Plaintiffs insufficiently allege conspiracy to violate civil rights is unpersuasive. Initial pleadings are only required to give notice of a claim, and must be construed liberally so as to do substantial justice. *Uvalde*, 625 F.2d at 549. The Court notes that Plaintiffs' complaint comes tenuously close to failing to provide enough information for the court to determine whether there exists a recognized legal theory upon which it can base relief. However, Plaintiffs' complaint exceeds a telling of "conclusory allegations, unwarranted factual inferences, or legal conclusions" that would ordinarily justify granting a dispositive motion in the Defendant's favor. FED. R. CIV. P 12(b)(6). Specifically, St. Martin alleges that she was not the first victim of Schaeffer's misuse of police power, but rather, that in the seven years preceding her encounter with Schaeffer, many complaints had been launched against Schaeffer and, presumably, brought to the attention of the St. John Parish Sheriff's Office.

13

(Rec. Doc. 1, p. 7).  Plaintiffs further allege that those complaints fell on deaf ears at best, and, at worst, were purposefully ignored in order to allow Schaeffer to continue in his official capacity as a law enforcement officer.  *Id.*

This Court has held that allegations brought under § 1985(3) can be substantiated by circumstantial evidence because "conspirators rarely formulate their plans in ways susceptible of proof by direct evidence."  *Smith v. Tangipahoa Parish Sch. Bd.,* No. Civ. A. 05-6648, 2006 WL 3395938, at *17 (E.D. La. Nov. 22, 2006) (Berrigan, J.) (ruling on Defendant's motion for summary judgment) (quoting *Crowe v. Lucas*, 595 F.2d 985 (5th Cir. 1979)).  Here, the Court is faced with Plaintiffs' argument that Schaeffer's actions on the night of February 20, 2007 can be taken with the alleged litany of prior complaints against Schaeffer and the inference that other named Defendants were aware of those complaints, and chose not to act upon them, to form a concrete factual predicate for a § 1985(3) claim.  The Court accepts Plaintiffs' argument, at least to the extent that the Court holds that no further evidentiary detail is needed for Plaintiffs to survive a 12(b)(6) motion and merit entry into discovery proceedings.  Accordingly, Schaeffer's motion to dismiss is denied.

The Court also addresses Schaeffers' argument that Plaintiffs fail to allege that a racial or otherwise class-based "insidiously discriminatory animus" motivated Defendants' alleged violations of civil rights.  *Griffin*, 403 U.S. 88, 102 (1971); (Rec. Doc. 16-2 p. 3).  The Court has already noted Plaintiffs' allegation that Sheriff Wayne Jones, the St. John Parish Sheriff's Office, and the Office of the Parish of St. John are liable in official capacities for ignoring repeated complaints about Schaeffer's conduct and for "disregarding the potential danger to the community of [Schaeffer's] possible future actions--specifically against women." (Rec. Doc. 1, p. 7).  It is readily inferrable from the language of St. Martin and Como's complaint that Defendant Schaeffer's actions are alleged to

14

have targeted women as a class.  Schaeffer does not address such a theory of discrimination in his motion to dismiss.

The Supreme Court has held that gender constitutes a cognizable class for the purposes of actions brought under 42 U.S.C. § 1985(3).  *Bray v. Alexandria Women's Health Clinic*, 506 U.S. 263, 320 (1993).  In order to meet the class-based animus standard of § 1985(3), the conspirators' conduct does not have to be motivated by hostility toward women.  *Id.* at 322.  The Court in *Bray* held that because "women are unquestionably a protected class, that requirement--as well as the central purpose of the statute--is satisfied if the conspiracy is aimed at conduct that only members of the protected class have the capacity to perform."  *Id.*  The allegations contained in Plaintiffs' complaint could very well fall within that holding's scope.  St. Martin alleges that Schaeffer sexually assaulted her and then unleashed an intense spate of intimidation and harassment aimed at her and, indirectly, at Como.  (Rec. Doc. 1, p. 5-7).  Plaintiffs' complaint also contends that women were the class most adversely affected by Schaeffer's behavior and by the other Defendants' failure to remedy it.  The Court notes that a finder of fact could determine that Plaintiffs' gender factored into their alleged victimization, despite their complaint lacking a crystal clear declaration that a conspiracy among the Defendants was motivated by an intent to violate the civil rights of women. To comply with the federal rules of pleading, a party must "(1) provide notice of the circumstances which give rise to the claim or (2) set forth sufficient information to outline the elements of the claim or permit inferences to be drawn that these elements exist."  *Blum v. Roberts*, Civil Action No. 06-2307, 2006 WL 2135457, at *2 (E.D. La. July 28, 2006) (Roby, J.) (quoting *General Star Indem. Co. v. Vesta Fire Ins. Co.*, 173 F.3d 946, 951 (5th Cir. 1999)).  Although Plaintiffs' claim could be more cogent, the Court finds that it meets the permissive standards of general notice pleading that apply here.

15

Because the law potentially affords relief on Plaintiffs' claim, the Court will not grant Schaeffer's motion to dismiss under Rule 12(b)(6).

### C.     Intracorporate Conspiracy Doctrine

Schaeffer argues that the intracorporate conspiracy doctrine bars Plaintiffs' 42 U.S.C. § 1985(3) claim.  The rationale behind the intracorporate conspiracy doctrine is that a corporation is a single entity that can act only by and through its officers and agents, thus precluding the plurality of legal personalities that a conspiracy requires.  *Stathos v. Bowden*, 514 F. Supp. 1288, 1291-92 (D.C. Mass. 1981).  The Fifth Circuit has regarded, as a long-standing rule, that "a corporation cannot conspire with itself any more than a private individual can and it is the general rule that the acts of the agent are the acts of the corporation."  *Hilliard v. Ferguson*, 30 F.3d 649, 653 (5th Cir. 1994) (quoting *Nelson Radio & Supply Co. v. Motorola, Inc.*, 200 F.2d 911, 914 (5th Cir. 1953)); *see also Dussouy v. Gulf Coast Inv. Corp.*, 660 F.2d 594, 603 (5th Cir. 1981) (explaining that "the multiplicity of actors necessary to a conspiracy is negated when the agents' acts are attributed to the corporation and the corporation and its agents are viewed as a single legal actor.").

Several courts, including the Fifth Circuit, have applied the intracorporate conspiracy doctrine to public and governmental entities.  The Eleventh Circuit found the doctrine applicable to a county jail and its employees (*Dickerson v. Alachua County Commission*, 200 F.3d 761 (11th Cir. 2000)); the Sixth Circuit applied it to a public school board and its members (*Hull v. Cuyahoga Valley Joint Vocational Sch. Dist.*, 926 F.2d 505 (6th Cir. 1991)); the Fifth Circuit applied it to a school board (*Hilliard*, 30 F.3d at 653); and a court of this jurisdiction applied it to a public university in *Chambliss v. Foote*, 421 F. Supp. 12, 15 (E.D. La. 1976)(Boyle J.).  The doctrine has had minimal exposure in civil rights litigation.  The Second Circuit, ruling against a professor suing his law school

16

employer under § 1985(3), held that "there is no conspiracy if the conspiratorial conduct challenged is essentially a single act by a single corporation acting exclusively through its own directors, officers, and employees, each acting in the scope of his own employment." *Hermann v. Moore*, 576 F.2d 453, 459 (2nd Cir. 1979). Some circuits seem to agree that the doctrine can apply to conspiracies alleged under § 1985(3). *See Dickerson*, 200 F.3d at 768. The Supreme Court, however, has yet to address the issue. *Quinn v. Nassau County Police Dept.*, 53 F. Supp. 2d 347, 359 (E.D.N.Y. 1999) (citing *Hull v. Shuck*, 501 U.S. 1261 (1991)) (White, J., and Marshall, J., dissenting to denial of petition for writ of cert.).

Arguments premised on the idea that intracorporate conspiracies are not legally or logistically possible face a number of obstacles.  The Fifth Circuit has held that "a possible exception to the intracorporate conspiracy doctrine exists where corporate employees act for their own personal purposes." *Benningfield v. City of Houston,* 157 F.3d 369, 379 (5th Cir. 1998); *see also Martinez v. Center for Health Care Services, Inc.*, No. SA-04-CA-0412-RF, 2005 WL 1168433, at *3 (W.D. Tex. May 17, 2005) (citing *Benningfield*, 157 F.3d at 378-79 to consider the plaintiff's contention that defendants conspired for their personal purposes in violating plaintiff's rights under § 1985(3)).  One court applied this rule, defining it as the "personal interest exception" to the intracorporate conspiracy doctrine, in denying defendants' motion for judgment as a matter of law on § 1985(3) claims. *Quinn*, 53 F. Supp. 2d at 360.  In addition, a case relied on by Schaeffer's motion emphasizes that the intracorporate conspiracy doctrine applies most effectively when the alleged conspirators are acting within the scope of their employment, rather than using advantages of their employment for personal gain. *See Hermann*, 576 F.2d at 459.

Furthermore, it appears that the doctrine is meant to apply to a "single act by a single

corporation" rather than to a prolonged series of collusion between members of the same entity or "corporation." *Id.* The Fifth Circuit has conceded that there are "strong arguments against the Nelson Radio Rule," referring to the earlier Fifth Circuit decision, relied upon by Schaeffer's motion, holding that "a corporation cannot conspire with itself . . . and the acts of the agent are the acts of the corporation." *Dussouy*, 660 F.2d at 603; *Nelson Radio & Supply Co.*, 200 F.2d at 914. In *Dussouy*, the Fifth Circuit pointed out that the original purpose of the rule attributing the acts of individuals to their corporations or entities was to "enable corporations to act, permitting the pooling of resources to achieve social benefits and, in the case of tortious acts, to require a corporation to bear the costs of its business enterprise." *Id.* With those goals in mind, the Fifth Circuit questioned the extension of the rule to "preclude the possibility of intracorporate conspiracy" and noted that "officers and directors of a single corporation could be liable for conspiracy under 42 U.S.C. § 1985(3)." *Id.* (citing *Novotny v. Great American Savings & Loan Assoc.*, 584 F.2d 1235 (3d Cir. 1978)) (en banc) (vacated on other grounds, 442 U.S. 366 (1979)).

After carefully reviewing the case law on intracorporate conspiracy, the Court finds that the doctrine is not intended to bar claims for an extended series of conspiratorial acts in the way that it bars claims against corporate officers, belonging to the same business entity, who conspire in discrete instances. Even in the context of suits against public entities and officials, the Court's position finds support. The Fifth Circuit, in *Hilliard*, applied the doctrine to bar a conspiracy claim brought against a school board arising from the single decision to deny employment to a convicted felon. 30 F.3d at 653. In *Hull*, the Sixth Circuit held that the doctrine barred a claim against a school board for non-renewal of a teacher's employment contract. 926 F.2d at 510; *see also Chambliss*, 421 F. Supp. at 15 (a court in this jurisdiction handing down a similar decision in favor of a university that declined

18

to renew one professor's contract). And the Second Circuit held that the doctrine covered a law school facing action from a professor who claimed to have been wrongfully fired. *Herrmann*, 576 F.2d at 459; *see also Dickerson*, 200 F.3d at 767 (the Eleventh Circuit denying a conspiracy claim against a county commission that demoted the plaintiff from   lieutenant to sergeant at the county jail). Each of these cases employed the intracorporate conspiracy doctrine in rejecting claims arising out of a single "corporate" decision without expressing that the doctrine could cover prolonged episodes of potentially conspiratorial conduct as well.

The Court also notes that, if the framework of intracorporate conspiracy can be applied to the instant case, as Schaeffer insists that it should, then whether Plaintiffs' 42 U.S.C. § 1985(3) claim is barred may depend on whether Schaeffer committed the underlying § 1983 violations in the capacity of his office or in satisfaction of personal motives.  St. Martin contends that she agreed to the Feb. 20, 2007 meeting with Schaeffer on the understanding that Schaeffer would be acting in his official capacity.  (Rec. Doc. 1, p. 4).  In addition, she alleges that his actions on that night were "an obvious abuse of police power."  (Rec. Doc. 1, p. 5).  Plaintiffs also maintain that Sheriff Wayne Jones, acting as an agent of the St. John Parish Sheriff's Office, failed to address numerous complaints made against Deputy Sheriff Schaeffer and that the Sheriff's office negligently allowed Schaeffer to continue in his official capacity.  (Rec. Doc. 1, p. 7).

However, Plaintiffs also allege facts suggestive of Schaeffer's actions being entirely personal pursuits, thus creating the party-multiplicity needed to overcome an intracorporate conspiracy defense.  This holds especially true where Schaeffer is accused of civil rights violations resulting from conduct in which he engaged in a personal capacity under the color of state law, namely coercing St. Martin into performing sex acts under threat of police retaliation. Schaeffer knew

19

Plaintiffs personally, the alleged assault and battery was of a sexual nature, and Schaeffer's alleged continued harassment of St. Martin and Como falls far outside of the scope of employment that would be the subject of an ordinary *respondeat superior* argument.  (Rec. Doc. 1, p. 4-6).

In light of a motion to dismiss under Rule 12(b)(6), this Court must liberally construe Plaintiff's complaint and draw all inferences in Plaintiff's favor.  *Brown v. Nationsbank Corp.*, 188 F.3d 579, 586 (5th Cir. 1999); *Eason v. Holt*, 73 F.3d 600, 601 (5th Cir. 1996).  As for the moving party, he must show beyond doubt that the Plaintiffs can prove no set of facts that would entitle them to relief.  *Vander Zee v. Reno*, 73 F.3d 1365, 1368 (5th Cir. 1996).  Given the heavy burden carried by the Defendant and the permissive standard enjoyed by the Plaintiff under 12(b)(6), it would be premature to dispose of Plaintiffs' § 1985(3) claim in order to satisfy a doctrine whose relevance to the instant case is far from clear.  Therefore, Schaeffer's 12(b)(6) motion to dismiss Plaintiffs' claims in light of intracorporate conspiracy theory is denied.

### D.   Failure to State a Claim under 42 U.S.C. § 1986

Schaeffer contends that, because St. Martin and Como have failed to state a claim under 42 U.S.C. § 1985, Conspiracy to Interfere with Civil Rights, they cannot state a claim under 42 U.S.C. § 1986, Action for Neglect to Prevent a Conspiracy Pursuant to § 1985.  (Rec. Doc. 16-2, p. 4). Having denied Schaeffer's motion to dismiss Plaintiffs' § 1985 claims, the Court also denies Schaeffer's motion to dismiss Plaintiffs' claims brought under § 1986.

**III.**   <u>Conclusion</u>

   **IT IS ORDERED** that Defendant, Wayne Schaeffer's 12(b)(6) Motion to Dismiss claims

brought by Plaintiffs Lisa St. Martin and Amber Como is **DENIED**.

   New Orleans, Louisiana, this 18th day of September, 2008.

   _____

   **HELEN G. BERRIGAN**
   **UNITED STATES DISTRICT JUDGE**